HOGAN LOVELLS US LLP
Michael L. Turrill (Bar No. 185263)
Sun Y. Moon (Bar No. 353630)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone:  (310) 785-4600
Facsimile:   (310) 785-4601
michael.turrill@hoganlovells.com
rachel.moon@hoganlovells.com

HOGAN LOVELLS US LLP
Anna Kurian Shaw (*pro hac vice pending*)
Brendan C. Quinn (*pro hac vice pending*)
Hadley Dreibelbis (*pro hac vice pending*)
555 13th Street, NW
Washington, D.C. 20004
Telephone:   (202) 637-5600
Facsimile:    (202) 637-5910
anna.shaw@hoganlovells.com
brendan.quinn@hoganlovells.com
hadley.dreibelbis@hoganlovells.com

*Attorneys for Plaintiff AXS Group LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXS GROUP LLC,<br><br>              Plaintiff,<br><br>v.<br><br>SECUREMYPASS.COM,<br><br>              Defendant. | Case No.<br><br>**COMPLAINT FOR**<br><br>**1) FEDERAL TRADEMARK COUNTERFEITING;**<br>**2) FEDERAL TRADEMARK INFRINGEMENT;**<br>**3) FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION;**<br>**4) COMMON LAW TRADEMARK INFRINGEMENT;**<br>**5) COMMON LAW FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION;**<br>**6) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE; AND**<br>**7) BREACH OF CONTRACT.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff AXS Group LLC ("**AXS**"), by and through undersigned counsel, and for its Complaint against Defendant SecureMyPass.com ("**SMP**"), states and alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff AXS sells tickets to live entertainment and sports events on behalf of event organizers through AXS's website and its mobile application.  To ensure tickets purchased by consumers are valid and authentic, AXS deploys several authentication and security measures.   For example, AXS assigns unique identification numbers to each ticket, adds AXS watermarks throughout the ticket's background, and includes a rotating encrypted QR code to prevent scammers from using screenshots of valid-appearing tickets to trick buyers into paying.

2.     Defendant SMP operates a website with the purpose of circumventing such measures, allowing anonymous brokers to create counterfeit tickets which bear the AXS trademarks and sell these tickets to unsuspecting consumers.  Because these counterfeit tickets are not genuine AXS tickets, broker resellers may deliver multiple copies of the same ticket, defrauding customers who are turned away when their ticket has already been redeemed and causing venues to find alternate accommodations for counterfeit ticket holders.  Additionally, these counterfeit tickets may not share certain consumer benefits and quality controls associated with genuine AXS tickets, such as admission into certain areas of a venue, which are linked to the unique AXS Mobile ID ticket.

3.     Consumers, venues, artists and AXS alike are all harmed by SMP's pernicious and fraudulent behavior, which flouts AXS's trademark rights and breaches the AXS Terms of Use governing the AXS website and AXS mobile application.

4.     AXS therefore brings this action against SMP alleging numerous federal and state claims, including federal trademark counterfeiting and federal trademark infringement under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1114, *et seq.*,

federal unfair competition under 15 U.S.C. § 1125(a)(1)(A), common law trademark infringement and unfair competition under California law, state statutory unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*, and breach of contract under California law, arising from SMP's willful, deliberate, and malicious acts that are causing substantial and irreparable harm to AXS's goodwill, reputation and business. SMP's acts are also causing widespread damage and harm to consumers who are the victims of SMP's fraudulent conduct, and to venues and other event organizers who shoulder the costs of identifying and assisting those victims.

## PARTIES

5.     AXS is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in this Judicial District at 110 East 9th Street, Suite B800, Los Angeles, California 90079.

6.     SMP operates a digital ticket delivery service through the Secure My Pass website located at the domain name www.securemypass.com ("**SMP Website**"), and its marketing and advertising materials identify as its address 123 N New York Avenue, Atlantic City, New Jersey 08401. Attached hereto as **Exhibit A** is a copy of a promotional email sent to individuals who have registered for an account on the SMP Website, wherein SMP identifies this address at the bottom of the page next to its name.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (original jurisdiction over trademark and copyright actions), because this dispute concerns the rights of parties under 15 U.S.C. § 1051 *et seq.* (the Lanham Act). This Court has jurisdiction over these Claims for Relief under 15 U.S.C. § 1121.

8.     This Court has supplemental jurisdiction over all state claims under 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this

Court assumes and exercises jurisdiction over the state claims.

9.    This Court has personal jurisdiction over SMP because, on information and belief, among other acts, SMP has: (1) either directly or through intermediaries conducted, transacted, and/or solicited business in the State of California and in this Judicial District; (2) derived substantial revenue from its business transactions in this State and Judicial District, and (3) purposefully availed itself of the rights and benefits of the laws of this State and Judicial District, such that this Court's assertion of jurisdiction does not offend traditional notions of fair play and due process.

10.    For example, as set forth in more detail below, SMP has sold, distributed, displayed, and/or allowed to be displayed counterfeit tickets to consumers in this Judicial District, including fake or fraudulent AXS tickets to events occurring at the Crypto.com Arena and the Greek Theatre located in Los Angeles, California.  In addition, SMP's infringing conduct has caused injury to AXS in California and this Judicial District such that SMP should reasonably expect such actions to have consequences in California and this Judicial District.

11.    Further, on information and belief, and in connection with their employment, one or more employees of SMP have accessed the AXS website located at https://www.axs.com/ ("**AXS Website**"), and/or the AXS mobile application, "AXS Tickets" ("**AXS Mobile App**"), available on the Apple App Store and Google Play Store, for purposes of counterfeiting AXS's tickets and otherwise violating the Lanham Act as detailed and set forth herein.  When accessing the AXS Website or using or downloading the AXS Mobile App, users agree to and are bound by AXS's Terms of Use, which provide: "You agree that any action at law or in equity arising out of or relating to these Terms shall be filed only in the state or federal courts located in Los Angeles County, California, and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action." Accordingly, SMP has consented to personal jurisdiction in this Judicial District. Attached hereto as **Exhibit B** is a true and accurate copy of the AXS Terms of Use.

12.    Venue is proper as to SMP in this Judicial District under 28 U.S.C. §§ 1391 and 1400(b) because, as described herein, SMP conducts, transacts, and/or solicits business in this Judicial District and the actions that give rise to the allegations of this Complaint, namely SMP's marketing, offering for sale, and sale of tickets to consumers, occur in this district.  SMP is also subject to AXS's Terms of Use, as noted above, which require any lawsuit to be brought in the state or federal courts in Los Angeles.

## **ALLEGATIONS OF FACT**

### *AXS's Authentication and Security Measures*

13.    AXS sells tickets for live entertainment events on behalf of its clients, who are venues, promoters, entertainers and sports teams.  The clients generally set the price and terms of their tickets, including the method of delivery of their tickets.

14.    Through the AXS Mobile App and AXS Website, consumers can purchase tickets and premium add-ons, such as VIP packages with exclusive merchandise, access to artist meet-and-greets, and enhanced seating and parking. These benefits are activated within the proprietary AXS Mobile ID technology for the individual ticketholder.  AXS guarantees that all AXS Mobile ID tickets are 100 percent valid and authentic tickets.

15.    To fulfill this commitment, AXS requests that consumers download the AXS Mobile App on their mobile device where the authentic AXS Mobile ID ticket can be securely delivered.  Any premium add-ons purchased by the consumer would be associated with the ticket and render in the consumer's AXS Mobile App.

16.    AXS Mobile ID tickets use a distinctive and recognizable color scheme and layout.  Consumers have the ability to select from several color schemes and modified layouts; however, authentic AXS tickets always prominently display the source-identifying terms "AXS Mobile ID" and have "AXS" digital watermarks visible in the background.  AXS tickets also display a rotating QR code, along with information about the venue, event, and purchaser.  Figure 1 below provides an

example of how a typical AXS Mobile ID ticket appears within the AXS Mobile App.



*Figure 1: Authentic AXS Mobile ID Ticket*

17.    To prevent misuse of the AXS Mobile App, AXS uses security and access control measures, including web application firewalls, data encryption, user authentication, and multifactor authentication.    For example, AXS uses its proprietary software, AXS Mobile ID, to assign a unique identifier to each customer and associate each ticket with its proper owner.    AXS has also developed a

proprietary code-rotation algorithm, which changes the ticket's QR code on a variable duration.

18.    AXS Mobile ID tickets are only delivered to a consumer's AXS account, to be displayed at the venue with their mobile phone as shown in the example above. AXS never delivers AXS Mobile ID tickets using a link to a website.

### *The AXS Marks*

19.    AXS has been operating under the mark "AXS" since at least as early as 2011, and is the owner of a family of AXS marks, including the following U.S. federal registration covering the AXS products and services (the "**Registered AXS Mark**"):

| Mark / Reg. No. / First Use Date | Status | Registered Goods and Services |
|---|---|---|
| **AXS**<br><br>Reg. No. 4429044<br>First Use: Aug. 2011 | Registered<br><br>Nov. 5, 2013 | **Class 35:** Promotion of sporting events, musical concerts and other entertainment events of others<br><br>**Class 41:** Arranging for ticket reservations for sporting events, musical concerts and other entertainment events; Ticket agency services for sporting events, musical concerts and other entertainment events, rendered online, through phone orders and through ticket outlets |

20.    The Registered AXS Mark is valid, subsisting, and in full force and effect.  A copy of the Certificate of Registration issued by the United States Patent and Trademark Office ("**USPTO**") for the Registered AXS Mark is attached as **Exhibit C**.  Further, the Registered AXS Mark is incontestable because AXS has used this mark continuously for at least five consecutive years.

21.    AXS additionally holds common law trademark rights in the mark which is the subject of the Registered AXS Mark, as well as other AXS and AXS-formative marks, including but not limited to, **aXs**, **axs**, AXS ID, and AXS

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

6

**COMPLAINT**

MOBILE ID (collectively with the Registered AXS Mark, the "**AXS Marks**"). These common law marks are used in connection with the ticketing products and services associated with the Registered AXS Mark, including but not limited to electronic tickets; ticketing software; ticket agency and reservation services; promotion of sporting events, musical concerts and other entertainment events; and entertainment services and audio/video recordings featuring live musical performances.

22.     AXS has developed an enduring reputation and legacy of goodwill in the AXS Marks, and which the relevant consuming public, including in California, has come to recognize and associate exclusively with the AXS Marks, AXS, and the AXS Products and Services.

23.     For example, AXS and the AXS Products and Services have been featured in prominent, national publications, including but not limited to The Hollywood Reporter, Billboard and Sports Business Journal.  Exemplary articles featuring AXS are attached hereto as **Exhibit D**.

24.     As a result of AXS's extensive sales, advertising, marketing and promotional efforts, the AXS Marks serve as a source-identifier for AXS and its high-quality, trustworthy delivery of ticketing products and services.

25.     Given the guarantees AXS has made to its customers regarding the authenticity and trustworthiness of its ticketing services, and the significant time and monetary investments that customers make in such products and services, the goodwill associated with the AXS Marks is critical for maintaining trust and confidence in the AXS Products and Services.

### The AXS Terms of Use

26.     Use of the AXS Website and AXS Mobile App is governed by the AXS Terms of Use.  *See* **Exhibit B**.

27.     Under the AXS Terms of Use, AXS Website and AXS Mobile App users are granted a revocable, limited, personal, non-exclusive and non-transferable

license to access AXS's Products and Services, *solely for personal and non-commercial use*. *See id.*

28.    The AXS Terms of Use contain the following provision related to the AXS Marks: "The trademarks, logos, and service marks displayed on the Services (collectively the "Trademarks") are the registered and unregistered trademarks owned by us or by our licensors, service providers and or others that have granted us permission to use such Trademarks. *You may not use the Trademarks in connection with any product or service that is not offered by us, and users are not granted any license or right to use the Trademarks for commercial or any unauthorized purposes. You may not use the trademarks or create any domain names, social media handles, advertisements or other materials that could reasonably mislead consumers into believing they are dealing with AXS or an AXS-authorized source*." (emphasis added). *See id.*

29.    The AXS Terms of Use further specify that "All rights not expressly granted herein are reserved. Any unauthorized use of the Materials or violation of this provision *is a material breach of these Terms of Use and may be a violation of applicable law*. If you breach any of these Terms, the above license will terminate automatically, and you must immediately destroy any downloaded or printed Materials." (emphasis added). *See id.*

30.    Previous versions of the AXS Terms of Use on both the AXS Website and Mobile App contained substantially similar provisions.

### *SMP's Counterfeiting Use of the AXS Marks*

31.    Upon information and belief, SMP is a website platform used primarily by bulk ticket resellers and brokers to sell buyers access to large volumes of tickets without actually transferring the tickets to the buyer. SMP's website facilitates such transactions by evading established security measures for tickets originally sold or distributed by parties such as AXS. Attached hereto as **Exhibit E** are screenshots of the SMP Website.

32.    SMP does this by essentially spoofing the AXS Mobile ID ticket, including what looks to be a dynamic QR code, thereby creating a counterfeit ticket (the "**Counterfeit Product**"), which can be scanned at venue entry.

33.    Below at Figure 2 is a side-by-side comparison of authentic AXS Mobile ID tickets to the Counterfeit Product.

| *Figure 2: Comparison of an Authentic AXS Mobile ID Ticket to the SMP Counterfeit Product* | |
|---|---|
| **Authentic AXS Mobile ID Ticket** | **SMP's Counterfeit Product** |
|  |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   34.    As shown in Figure 2, the Counterfeit Product displays the same grid

21   background featuring the AXS mark; the prominent use of the AXS MOBILE ID

22   mark; and use of the AXS logo mark on the QR code.  On the top of the ticket the

23   SMP Website address is listed, differentiating the Counterfeit Product from the

24   authentic AXS Mobile ID tickets.

25   35.    Upon information and belief, in order to generate the Counterfeit

26   Product, SMP offers a web browser add-on, which is a software extension providing

27   additional functionality within the user's web browser.  AXS believes that SMP uses

28   this browser add-on to record interactions between ticket brokers and AXS within



the AXS Website, and then generate the Counterfeit Products.  SMP therefore accesses the AXS Website when the web browser add-on is used.

36.    Attached hereto at **<u>Exhibit F</u>** is an audio-visual recording posted on YouTube by an account named "Secure my pass" which is also embedded on the SMP Website, which purports to describe the process SMP takes to access the AXS Website and AXS Mobile ID tickets, available at https://www.youtube.com/watch?v=uAQdkarGKk4&t; *see also* **<u>Exhibit G</u>** attached hereto.  Upon information and belief, SMP is the source of this recording.  In order to create the recording, SMP also had to access the AXS Website.

37.    By virtue of accessing the AXS Website, SMP has agreed to AXS's Terms of Use and is subject to the provisions contained therein, including as described *supra* at paragraphs 11 and 26-30.

38.    The Counterfeit Product is materially different from the authentic AXS Mobile ID ticket and conveys little to none of the additional benefits provided by an AXS Mobile ID ticket to consumers who unknowingly receive the Counterfeit Product delivered by SMP.

39.    Although the Counterfeit Products contain a dynamic QR code which may update at a regular cadence similar to an AXS Mobile ID ticket, the Counterfeit Products are often **not** linked to the purchaser's identity (as the actual authentic tickets remain within the ticket broker's account and are consequently linked to that person or entity).  For this reason, the broker could easily send the same link to multiple buyers, creating a race to the venue.  Once the first buyer scans into the venue using the Counterfeit Product, all remaining latecomers would be denied access at the venue gate.

40.    Consequently, purchasing consumers of the Counterfeit Products are not guaranteed entry into the venue.

41.    As discussed *infra* ¶ 48, SMP has also created Counterfeit Products which list nonexistent sections and seat numbers at venue locations.  For this reason,

1    even if purchasers are able to enter the venue with the Counterfeit Product, they may

2    be removed from the venue once the venue employees determine that the spoofed

3    ticket is not authentic (such as a ticket that directs the purchaser to a non-existent

4    seat, or the venue is otherwise aware of the fraudulent practices of SMP prior to

5    scanning the ticket and understands the ticket to be a counterfeit).

6        42.    Moreover, because SMP is generating merely an imitation copy of the

7    ticket, this Counterfeit Product typically does not include any of the additional

8    benefits, products and services that may have been sold in connection with the

9    authentic ticket, such as access to VIP locations and services, exclusive merchandise,

10   "meet-and-greet" opportunities and venue parking passes, and thus SMP is providing

11   modified, inferior products and services in connection with its infringing use of the

12   AXS Marks.

13       43.    SMP also partners with Phantom Checker, a desktop and mobile

14   application that monitors ticketing websites including AXS for ticketing "drops" so

15   that bulk ticket brokers can beat ordinary concertgoers to the punch in purchasing

16   tickets for a given show.  Attached hereto as **Exhibit H** are screenshots of the SMP

17   Website featuring its partnership with Phantom Checker.  This furthers the aims of

18   the brokers and SMP to sell Counterfeit Products *en masse* in connection with high-

19   ticketed (and highly coveted) events.

20       44.    Finally, because these Counterfeit Products are sold via third-party

21   platforms, AXS cannot verify the legitimacy of those tickets.  Yet SMP and brokers

22   often sell the Counterfeit Products to consumers at prohibitively high and inflated

23   prices.

24       45.    SMP's fraudulent practices have received significantly negative public

25   attention, including the news article attached hereto as **Exhibit I**.  In the article,

26   SMP's method of delivery is described as creating "an opportunity for unethical

27   brokers to double or even triple sell the same ticket on competing platforms,

28   collecting payments from several customers for a single barcode."

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

*Ongoing Customer and Partner Harm from SMP's Activities*

46.    SMP's use of the AXS Marks is likely to cause confusion, deception, and mistake that will be exceedingly harmful to AXS and which tarnishes AXS's reputation and goodwill.   It is no surprise that as a result of SMP's infringing activities, many consumers and venue partners are experiencing significant harm, including lost revenue, costs, and distress; and consumers are likely to attribute such issues to AXS.

47.    Buried in its responses to Frequently Asked Questions, SMP admits that venues have denied entry to customers with cloned counterfeit AXS tickets and that SMP is unable to guarantee entry for those venues with known issues, which include Los Angeles-based Crypto.com Arena.  Attached hereto as **Exhibit J** is a copy of the SMP Website FAQs, which admits that AXS ticket holders were denied entry and lists those venues that have denied entry.

48.    When these ticket holders are denied entry due to receiving a Counterfeit Product, AXS's venue partners reach out to AXS to report such issues. For example, on January 4, 2025, a customer who had purchased a Counterfeit Product from a broker via the GameTime app was unable to attend the LA Kings vs. Tampa Bay Lightning game after his tickets were confirmed to be fraudulent. Although the Counterfeit Product provided the customer with a valid entry into the Crypto.com Arena when scanned, the seats listed on the ticket did not exist.  Instead, the listed seats were attached to the Tunnel Suites.  Below in Figure 3 is a photograph of the Counterfeit Product received by this customer.  The bottom of the phone screen indicates that the ticket was provided through SMP.

*Figure 3: Counterfeit LA Kings vs. Tampa Bay Lightning Ticket, Jan. 4, 2025*

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



49.    On October 23, 2024, a customer was turned away at the Greek Theatre because they had unknowingly purchased a Counterfeit Product which was already redeemed prior to the customer's arrival.  Below in Figure 4 are photographs of the Counterfeit Product.  Again, the ticket is provided by SMP as shown at the top of the phone screen.

> *Figure 4: Counterfeit Suki Waterhouse Ticket at Greek Theatre, Oct. 23, 2024*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    50.    At least seven customers were denied entry to an October 14, 2025
23  Lorde concert at Red Rocks Amphitheatre after they tried scanning Counterfeit
24  Products at the entry gate.  Each of these customers had tickets which showed the
25  "securemypass.com" delivery website, indicating that they were Counterfeit
26  Products.  Below at Figure 5 is a copy of the Counterfeit Product one of these
27  customers received.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



*Figure 5: Counterfeit Lorde Ticket at Red Rocks Amphitheatre, Oct. 14, 2025*

21   51.    On October 11, 2025, a customer was denied entry to a Vegas Golden
22   Knights game when the venue manager realized that the customer was in possession
23   of a Counterfeit Product.  Below in Figure 6 is a photograph of the Counterfeit
24   Product, and at the top of the screen SMP is again identified.

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23





Figure 6: Counterfeit St. Louis Blues v. Vegas Golden Knights Ticket, Oct. 11, 2025

24    52.    Numerous customers have also contacted AXS directly to complain
25  about issues with the Counterfeit Products, believing AXS to be the source of, or
26  otherwise affiliated with, the Counterfeit Products, which demonstrates that SMP's
27  activities are causing actual consumer confusion and significant harm.    These
28  customers reference being directed to the SMP Website, rather than being able to add

the tickets to their AXS account via the AXS Mobile App or AXS Website.

53.    For example, one customer attending the San Jose Sharks vs. Utah Mammoth game at Delta Center contacted AXS stating that she "got an email from AXS saying Urgent: Ticket Acceptance to get my tickets into my AXS account, however, the link in the email is to a website called *securemypass* – it does not allow me to save the tickets to my AXS account."

54.    Another customer with plans to attend a Paul McCartney concert at an AXS-affiliated venue stated, "I bought tickets for Paul McCartney on Gametime tickets and was sent a link yesterday saying your tickets have been delivered, however they don't show up in the AXS app.  They only open in the web link they sent which is *Securemypass.com*.  Gametime support said the tickets are definitely valid.  Will this be an issue getting in?"

55.    And a customer attending the Sleep Token event at Crypto.com Arena reached out to AXS stating that he "cannot see passes that aren[']t on the axs app. *securemypass.com* is the site they were sent to."

56.    SMP's counterfeiting and infringing activities are causing and are likely to cause significant damage and harm to AXS's reputation and goodwill.  They are also causing and are likely to cause significant harm to vendor clients and consumers as well.

57.    To address this ongoing harm, AXS sent a cease-and-desist letter to SMP on June 10, 2025, demanding that SMP stop all unauthorized use of the AXS Marks.  SMP did not respond to this letter.

58.    For the reasons detailed above, SMP's activities infringe AXS's rights in the AXS Marks and the AXS Mobile App, and give rise to the claims set forth below.

## COUNT ONE

### *Federal Trademark Counterfeiting Under 15 U.S.C. § 1114(1)*

59.    AXS incorporates paragraphs 1 through 58, as if fully set forth herein.

60.     AXS owns U.S. Registration No. 4429044 for the mark AXS ("**Registered AXS Mark**"), a federal trademark registration which is valid, incontestable and in full force and effect.  AXS is the owner of all rights, title, and interest in the Registered AXS Mark.

61.     Without AXS's authorization or consent, SMP has used the Registered AXS Mark in U.S. commerce to market, promote, offer for sale, sell and/or distribute the Counterfeit Products.  SMP intentionally reproduced, copied, and/or colorably imitated the Registered AXS Mark and/or used designations that are identical to, or substantially indistinguishable from, the Registered AXS Mark on or in connection with the Counterfeit Products.

62.     SMP's actions described above are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of the Counterfeit Products, SMP's services, and SMP's commercial activities, and thus constitute counterfeiting of the Registered AXS Mark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Upon information and belief, SMP's conduct is willful, deliberate, intentional and in bad faith.

64.     As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the Registered AXS Mark.  AXS has no adequate remedy at law and is entitled to injunctive and other relief.

## COUNT TWO

### *Federal Trademark Infringement Under 15 U.S.C. § 1114(1)*

65.     AXS incorporates paragraphs 1 through 64, as if fully set forth herein.

66.     AXS owns the Registered AXS Mark, which is valid and in full force and effect.  AXS is the owner of all rights, title, and interest in the Registered AXS Mark.

67.     The Registered AXS Mark is inherently distinctive, and further, the

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

Registered AXS Mark is incontestable.

68.    SMP has used and continues to use in commerce marks which are identical or confusingly similar to the Registered AXS Mark in connection with the sale, offering for sale, advertising and marketing of event ticketing products and services, and which use is likely to cause confusion, or to cause mistake or to deceive, in violation of the Lanham Act, 15 U.S.C. § 1114.

69.    AXS has been, and will continue to be, damaged by SMP's acts of infringement in an amount to be determined at trial.

70.    SMP's acts have been committed with knowledge of AXS's exclusive rights and goodwill in the Registered AXS Mark.

71.    Upon information and belief, SMP's conduct is willful, deliberate, intentional and in bad faith.

72.    As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the Registered AXS Mark.  AXS has no adequate remedy at law and is entitled to injunctive and other relief.

## COUNT THREE

### Federal False Designation of Origin and Unfair Competition
### Under 15 U.S.C. § 1125(a)(1)(A)

73.    AXS incorporates paragraphs 1 through 72, as if fully set forth herein.

74.    AXS is the owner of all rights, title and interest in the AXS Marks, which are uniquely associated with AXS as the source of the products and services offered in connection with the AXS Marks.

75.    The AXS Marks are inherently distinctive and have additionally acquired distinctiveness by virtue of AXS's widespread use of and investment therein.

76.    SMP has and continues to use in commerce marks which are identical or confusingly similar to the AXS Marks in connection with the sale, offering for

sale, advertising and marketing of event ticketing products and services, which use is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of SMP with AXS or as to the origin, sponsorship or approval of SMP's services or commercial activities by AXS, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

77.    Upon information and belief, SMP's conduct is willful, deliberate, intentional and in bad faith.

78.    As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the AXS Marks.  AXS has no adequate remedy at law, and is entitled to injunctive and other relief.

## COUNT FOUR

### *Common Law Trademark Infringement Under California Law*

79.    AXS incorporates paragraphs 1 through 78, as if fully set forth herein.

80.    AXS is the owner of all rights, title and interest in the AXS Marks, which are uniquely associated with AXS as the source of the products and services offered in connection with the AXS Marks.

81.    The AXS Marks are inherently distinctive and have additionally acquired distinctiveness by virtue of AXS's widespread use of and investment therein.

82.    AXS has established significant goodwill in its AXS Marks, and SMP is trading upon AXS's goodwill therein through the unauthorized and unlicensed use of marks which are identical or confusingly similar to the AXS Marks.

83.    SMP's intentional, unauthorized use of marks which are identical or confusingly similar to the AXS Marks in connection with the sale, offering for sale, advertising and marketing of its event ticketing products and services is likely to cause confusion, or to cause mistake or to deceive, in violation of California common law.

84.    SMP's intentional, unauthorized use of marks which are identical or

confusingly similar to the AXS Marks in connection with the sale, offering for sale, advertising and marketing of event ticketing products and services constitutes infringement of AXS's preexisting, superior and longstanding common law rights in the AXS Marks, which AXS acquired in good faith.

85.    SMP has willfully, deliberately, maliciously, intentionally, knowingly and in bad faith violated – and continues to violate – AXS's common law rights in the AXS Marks.

86.    As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the AXS Marks.  AXS has no adequate remedy at law and is entitled to injunctive and other relief.

## COUNT FIVE

### Common Law False Designation of Origin
### and Unfair Competition Under California Law

87.    AXS incorporates paragraphs 1 through 86, as if fully set forth herein.

88.    AXS has adopted and used the AXS Marks in U.S. commerce and in California, which consumers have come to associate exclusively with AXS.  AXS is the owner of all rights, title and interest in the AXS Marks.

89.    SMP, without authorization, is promoting, advertising, selling and distributing its own goods and services under the AXS Marks, including in California, in violation of AXS's rights under California common law.

90.    SMP's unauthorized use of the AXS Marks for goods and services competing with AXS's goods and services is likely to cause confusion, deception or mistake in the marketplace as to the source or sponsorship of SMP's goods and services.

91.    Upon information and belief, SMP's conduct is willful, deliberate, intentional and in bad faith.

92.    As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the AXS Marks.  AXS

has no adequate remedy at law and is entitled to injunctive and other relief.

## COUNT SIX

### *State Statutory Unfair Competition*

### *Under Cal. Bus. & Prof. Code § 17200, et seq.*

93.    AXS incorporates paragraphs 1 through 92, as if fully set forth herein.

94.    California's Unfair Competition Law ("**UCL**") prohibits any business practice that is "unlawful" or "unfair."  Cal. Bus. & Prof. Code § 17200.

95.    AXS has adopted and used the AXS Marks in U.S. commerce, which consumers have come to associate exclusively with AXS.  AXS is the owner of all rights, title and interest in the AXS Marks.

96.    On information and belief, SMP has intentionally appropriated the AXS Marks with the intent of causing confusion, mistake and deception as to the source of their goods and services with the intent to pass off their goods and services as those of AXS.

97.    Specifically, SMP uses the AXS Marks to create counterfeit AXS Mobile ID tickets, which can be scanned at venue entry but do not otherwise confer the benefits associated with an authentic AXS Mobile ID ticket.

98.    SMP's unauthorized use and appropriation of the AXS Marks to promote, advertise, sell and distribute its own counterfeit goods and services are in violation of the Lanham Act and/or California statutory and common law.  It is well-established that such infringement and counterfeiting are predicate unlawful acts under the UCL.

99.    By "passing off" SMP's products as those of AXS, or as somehow related to, associated with, sponsored, or endorsed by AXS, SMP's actions are quintessentially "unfair" under the UCL.

100.    Upon information and belief, SMP's conduct is willful, deliberate, intentional and in bad faith.

101.    As a result of SMP's acts, SMP caused, and will continue to cause,

1   irreparable harm to AXS and to the goodwill associated with the AXS Marks.  AXS
2   has no adequate remedy at law and is entitled to restitution, injunctive and other
3   relief.

4        102.   SMP's unlawful and unfair business practices not only harm AXS, but
5   also consumers, venues and artists alike, by depriving consumers of the benefits
6   associated with the authentic AXS Mobile ID tickets, and by damaging the reputation
7   and goodwill earned by the venues and artists.  AXS thus brings this claim to remedy
8   an important right affecting the public interest and seeks to confer on the public a
9   significant benefit.

10                            **COUNT SEVEN**
11                  ***Breach of Contract Under California Law***

12        103.   AXS incorporates paragraphs 1 through 102, as if fully set forth herein.
13        104.   AXS's Terms of Use constitute a valid and enforceable contract.  On
14   information and belief, SMP has used the AXS Website and/or downloaded the AXS
15   Mobile App.

16        105.   The AXS Terms of Use provide notice that "the trademarks, logos, and
17   service marks displayed on the Services (collectively the "Trademarks") are
18   registered and unregistered trademarks owned by [AXS] or by our licensors, service
19   providers and or others that may have granted us permission to use such Trademarks"
20   and that users "may not use the Trademarks in connection with any product or service
21   that is not offered by us, and users are not granted any license or right to use the
22   Trademarks for commercial or any unauthorized purposes."  The AXS Terms of Use
23   further state that users "may not use the trademarks or create any domain names,
24   social media handles, advertisements or other materials that could reasonably mislead
25   consumers into believing they are dealing with AXS or an AXS-authorized source."

26        106.   SMP agreed to the AXS Terms of Use by using the AXS Website and/or
27   by using, accessing or downloading the AXS Mobile App.

28        107.   SMP has breached the AXS Terms of Use by using the AXS Marks in

U.S. commerce to market, promote, offer for sale, sell and distribute the Counterfeit Products without AXS's authorization or consent. SMP intentionally reproduced, copied, and/or colorably imitated the AXS Marks and/or used designations that are identical to, or substantially indistinguishable from the AXS Marks on or in connection with the Counterfeit Products.

108. As a result of SMP's acts, SMP caused, and will continue to cause, irreparable harm to AXS and to the goodwill associated with the AXS Marks. AXS has no adequate remedy at law and is entitled to injunctive and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, AXS prays for the following relief from this Court:

A. Enter judgment in favor of AXS and against SMP on all counts.

B. Permanently enjoin SMP and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, vendors, successors, assigns, and all persons in active concert or participation with any of them:

    i. From using and displaying the AXS Marks, in any form, including but not limited to in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to the AXS Marks, in any unauthorized manner including, but not limited to, use on or in connection with any products in any online or offline context, including without limitation the Counterfeit Products; the SMP Website and any other online venue for the Counterfeit Products; any other websites or online platforms including social media and mobile applications; promotional and advertising materials; and as part of any trademarks, business names, domain names, e-mail addresses, URLs, metatags, screen names, social media names, keywords such as advertising keywords, or any other identifiers;

    ii. From representing by any means whatsoever, directly or indirectly,

that SMP or any products or services offered by SMP, including without limitation the Counterfeit Products, or any activities undertaken by SMP, emanate from AXS, or are authorized, licensed, or otherwise affiliated with or sponsored or endorsed by AXS; and

iii.    From assisting, aiding, abetting, encouraging, or inducing any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs B.i-ii above.

C.    Order the disabling of any website or domain name associated with any website owned, operated or managed by SMP wherein SMP operates any part of a business associated with generating links to the Counterfeit Products or any products that use or display the AXS Marks, in any form, including but not limited to in connection with any other wording or designs, or any marks, logos, designs, designations, or indicators that are confusingly similar to the AXS Marks.

D.    Order the destruction of all products and items in SMP's possession or under its control that bear the AXS Marks and/or any other marks, logos, designs, designations, or indicators that are confusingly similar to the AXS Marks, including without limitation any Counterfeit Products, and to confirm such destruction in writing to AXS, and to provide to AXS the identity and complete contact information for all persons and entities that assisted or enabled SMP to make, advertise, promote, sell, distribute, and transport the Counterfeit Products.

E.    Order directing SMP to file with this Court and serve on AXS's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction and other orders issued by the Court.

F.    Order an accounting and order SMP to pay over to AXS:

i.    All monetary gains, profits, and advantages derived by SMP for the acts complained of herein;

ii.    Damages incurred by AXS, including enhanced damages (up to

treble damages) as authorized by 15 U.S.C. § 1117, and statutory damages of $2,000,000 per mark per type of counterfeit product or service sold, offered for sale, or distributed by SMP bearing marks deemed to be counterfeits of the AXS Marks, as authorized by 15 U.S.C. § 1117(c); and

iii.    AXS's costs and disbursements in this action, including reasonable attorneys' fees as authorized by 15 U.S.C. § 1117, and other applicable statutes and laws.

G.    Award AXS prejudgment interest as this Court deems applicable.

H.    Award AXS any other or further relief that the Court deems just or appropriate.

## JURY DEMAND

AXS demands a trial by jury on all issues so triable.


Respectfully submitted this 13th day of January, 2026.


**HOGAN LOVELLS US LLP**


*/s/ Michael L. Turrill*
Michael L. Turrill (Bar No. 185263)
Sun Y. Moon (Bar No. 353630)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.turrill@hoganlovells.com
rachel.moon@hoganlovells.com

Anna Kurian Shaw (*pro hac vice pending*)
Brendan C. Quinn (*pro hac vice pending*)
Hadley Dreibelbis (*pro hac vice pending*)
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, D.C. 20004
Tel.: (202) 637-5600
Fax: (202) 637-5910
anna.shaw@hoganlovells.com
brendan.quinn@hoganlovells.com
hadley.dreibelbis@hoganlovells.com
*Attorneys for Plaintiff AXS Group LLC*