HOGAN LOVELLS CADWALADER US LLP
Michael L. Turrill (Bar No. 185263)
Sun Y. Moon (Bar No. 353630)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone:   (310) 785-4600
Facsimile:   (310) 785-4601
michael.turrill@hlc.com
rachel.moon@hlc.com

HOGAN LOVELLS CADWALADER US LLP
Anna Kurian Shaw *(Pro Hac Vice)*
Brendan C. Quinn *(Pro Hac Vice)*
Hadley Dreibelbis *(Pro Hac Vice)*
555 13th Street, NW
Washington, D.C. 20004
Telephone:   (202) 637-5600
Facsimile:   (202) 637-5910
anna.shaw@hlc.com
brendan.quinn@hlc.com
hadley.dreibelbis@hlc.com

*Attorneys for Plaintiff AXS Group LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXS GROUP LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>SECUREMYPASS.COM,<br><br>                    Defendant. | Case No. 2:26-cv-00361-SPG-PVC<br><br>**PLAINTIFF AXS GROUP LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT SECUREMYPASS.COM AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: August 26, 2026<br>Time: 1:30 p.m.<br>Place: 5C<br><br>Assigned to Hon. Judge Sherilyn Peace Garnett |

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on August 26, 2026, in Courtroom 5C of the above-captioned courthouse, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff AXS Group LLC ("**AXS**") will present its Motion for Default Judgment against Defendant Securemypass.com ("**SMP**") and Permanent Injunction (the "**Motion**") in accordance with Federal Rule of Civil Procedure 55 and Local Rule 55-1.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the supporting Declarations of Hadley Dreibelbis, Michael L. Turrill and Greg Schmale and all exhibits attached thereto, and relies on its Complaint, the pleadings and records on file in this action, and any further oral or written documentation that may be provided to the Court as necessary or requested.

Respectfully submitted this 2nd day of July 2026.

**HOGAN LOVELLS CADWALADER US LLP**

*/s/ Michael L. Turrill*
Michael L. Turrill
Sun Y. Moon

Anna Kurian Shaw *(Pro Hac Vice)*
Brendan C. Quinn *(Pro Hac Vice)*
Hadley Dreibelbis *(Pro Hac Vice)*

*Attorneys for Plaintiff AXS Group LLC*

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND ........................................................................ 1

    A.    AXS's Business ............................................................... 1

    B.    The AXS Marks .............................................................. 2

    C.    SMP's Counterfeiting Use of the AXS Marks ........................... 4

    D.    SMP's Post-Complaint Activities .......................................... 6

    E.    SMP's Default ................................................................ 8

III.   LEGAL STANDARD ............................................................... 8

IV.   ARGUMENT ......................................................................... 9

    A.    AXS Is Entitled to Default Judgment Against SMP ................... 9

        1.    The Court Has Jurisdiction Over SMP and Service Was Properly Effected ................................................................ 9

        2.    AXS Has Satisfied the Procedural Requirements .......... 11

        3.    The *Eitel* Factors Strongly Favor Default Judgment ...... 11

            a.    AXS Will Be Prejudiced Without the Default Judgment Remedy ................................................ 11

            b.    AXS Has Demonstrated the Substantive Merits of Its Claims and Sufficiency of Its Complaint ....... 12

                i.    AXS's Trademark Counterfeiting, Infringement and Unfair Competition Claims ................................... 12

                ii.    AXS's Breach of Contract Claim ......................... 13

            c.    The Sum of Money at Stake Is Proportional to the Seriousness of SMP's Conduct ........................... 14

            d.    No Possibility of Dispute Concerning Material Facts ................................................................ 17

            e.    SMP's Default Was Inexcusable ......................... 17

            f.    Default Judgment Is Appropriate and Not Contrary to Policy ............................................................. 18

    B.    AXS Is Entitled to Its Requested Remedies ........................... 18

        1.    AXS Is Entitled to a Permanent Injunction .................... 18

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

i

2.    AXS Is Entitled to Statutory Damages ...........................20

3.    AXS Is Entitled to Its Reasonable Attorneys' Fees and Costs ...................................................................................20

a.    AXS's Entitlement to Attorneys' Fees................ 20

b.    AXS's Entitlement to Costs ................................ 22

V.    CONCLUSION ....................................................................... 22

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980) .................................................................... 9

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
  No. CV 13-05167 BRO, 2015 WL 4517846 (C.D. Cal. July
  24, 2015) ................................................................................................... 19

*Animaccord Ltd. v. Tran*,
  No. 23-00173 LEK-WRP, 2024 WL 1976031 (D. Haw.
  Mar. 28, 2024) .......................................................................................... 21

*AXS Grp. LLC v. Internet Referral Servs., LLC*,
  No. 2:24-377-SPG-EX, 2024 WL 4875389 (C.D. Cal. Jan.
  24, 2024) (J. Garnett) ............................................................................... 14

*Blumenthal Distrib., Inc. v. Comoch Inc.*,
  652 F.Supp.3d 1117 (C.D. Cal. 2023) ...................................................... 21

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .................................................................................. 10

*Cal. Diversified Promotions, Inc. v. Musick*,
  505 F.2d 278 (9th Cir. 1974) .................................................................... 10

*Century Real Est. Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988) .................................................................. 19

*City of Chi. v. Int'l Coll. of Surgeons*,
  522 U.S. 156 (1997) .................................................................................... 9

*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,
  No. CV 14-2307 RSWL (FFMx), 2014 WL 4679001 (C.D.
  Cal. Sept. 18, 2014) .................................................................................. 16

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .................................................................................. 18

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ......................................................... *passim*

*GS Holistic, LLC v. Heaven N Sky, Inc*,
No. 2:24-CV-07775-SPG-MAR, 2025 WL 3190639 (C.D.
Cal. Apr. 10, 2025) (J. Garnett) .......................................................... 12, 13

*Ingram v. Oroudijan*,
647 F.3d 925 (9th Cir. 2011) ..................................................................... 21

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
68 F.4th 1203 (9th Cir. 2023) .................................................................... 21

*Kinsley Tech. Co. v. Ya Ya Creations, Inc.*,
No. 2:20-CV-04310-ODW, 2022 WL 3908831 (C.D. Cal.
Aug. 30, 2022) ............................................................................................ 12

*LG Corp. v. Huang*,
No. 16-CV-1162 JLS (NLS), 2017 WL 476539 (S.D. Cal.
Feb. 6, 2017) .............................................................................................. 16

*Motium, Inc. v. Leung*,
No. CV 20-00869-CJC, 2020 U.S. Dist. LEXIS 182467
(C.D. Cal. Oct. 1, 2020) ............................................................................. 14

*Patagonia, Inc. v. McHugh*,
No. LA CV19-07666 JAK (AFMx), 2020 WL 4258818
(C.D. Cal. Apr. 21, 2020) ..................................................................... 14, 18

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F.Supp.2d 1172 (C.D. Cal. 2002) .............................................. 12, 14

*Philip Morris U.S.A. Inc. v. Castworld Prods. Inc.*,
219 F.R.D. 494 (C.D. Cal. 2003) ........................................................ 8, 11

*Philip Morris USA Inc. v. Liu*,
489 F.Supp.2d 1119 (C.D. Cal. 2007) ..................................................... 16

*Pro Water Sol., Inc. v. Angie's List, Inc.*,
457 F.Supp.3d 845 (C.D. Cal. 2020) ........................................................ 13

*Russell v. Invech Inc.*,
No. 5:19-cv-01074-FMO-SHK, 2020 WL 6820805 (C.D.
Cal. Oct. 26, 2020) ...................................................................................... 21

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

iv
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

*Simple Design Ltd. v. Enerjoy Ltd.*,
  710 F.Supp.3d 817 (C.D. Cal. Jan. 5, 2024) .................................... 18, 19

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
  839 F.3d 1179 (9th Cir. 2016) ................................................................. 20

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ...................................................... 8, 17, 19

*Tempur Sealy Int'l, Inc. v. Seltyk Mattress, Inc.*,
  No. 2:22-cv-06194-ODW, 2023 WL 3075881 (C.D. Cal.
  Apr. 25, 2023) ......................................................................................... 18

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ................................................................................ 9

*Vogel v. Harbor Plaza Ctr., LLC*,
  893 F.3d 1152 (9th Cir. 2018) ................................................................. 20

*Wecosign, Inc. v. IFG Holdings, Inc.*,
  845 F.Supp.2d 1072 (C.D. Cal. 2012) ..................................................... 19

**Statutes**

15 U.S.C. § 1114 ............................................................................................ 12

15 U.S.C. § 1116(a) ....................................................................................... 18

15 U.S.C. § 1117 ............................................................................ 14, 19, 20, 22

15 U.S.C. §§ 1121, 1331 and 1338(a) ........................................................... 10

15 U.S.C. § 1125 ............................................................................................ 12

28 U.S.C. § 1331 .............................................................................................. 9

28 U.S.C. §§ 1367(a) and 1338(b) ................................................................ 10

28 U.S.C. §§ 1391 and 1400(b) ..................................................................... 10

50 U.S.C. § 3931 .............................................................................................. 8

Cal. Bus. & Prof. Code § 17200, *et seq.* ................................................... 9, 12

Cal. Bus. & Prof. Code § 17203 .................................................................... 18

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

v

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

**Other Authorities**

Fed. R. Civ. P. 12(h)(1) .................................................................................. 10

Fed. R. Civ. P. 54(c) ...................................................................................... 8, 9

Fed. R. Civ. P. 55(b)(2) ............................................................................... 8, 11

Local Rule 55-1 ............................................................................................ 8, 11

Local Rule 55-3 ............................................................................................... 20

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

vi
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

AXS filed this lawsuit against SMP on January 13, 2026. *See* Dkt. No. 1. Despite proper service on April 13, 2026, SMP has failed to appear or respond, Dkt. Nos. 29, 32, which is particularly notable, because it expressly recognized its failure to respond could result in a default judgment. Declaration of Hadley Dreibelbis in Support of AXS's Request for Entry of Default Judgment Against SMP and Permanent Injunction ("**Dreibelbis Decl.**") ¶ 9. The Clerk entered default against SMP on May 18, 2026. Dkt. No. 34; Dreibelbis Decl. ¶ 4.

AXS now seeks entry of default judgment and issuance of a permanent injunction, statutory damages, and attorneys' fees and costs.

## II.    BACKGROUND

### A.    AXS's Business

AXS is a leading ticketing platform that sells tickets to live entertainment and major sports events on behalf of its clients, who are venues, promoters, entertainers and sports teams. Dkt. No. 1 ¶¶ 1, 13. Consumers may purchase tickets and premium add-on experiences—including VIP packages with exclusive merchandise, artist meet-and-greets and enhanced seating and parking—through the AXS mobile application titled "AXS Tickets" ("**AXS Mobile App**") or AXS website at https://www.axs.com ("**AXS Website**"). *Id.* ¶ 14. Customers' tickets and associated benefits are linked to their individual accounts through AXS's proprietary AXS Mobile ID technology, which guarantees 100 percent validity and authenticity of AXS Mobile ID tickets by assigning a unique identifier to each customer and associating each ticket with its proper owner. *Id.* ¶¶ 14, 17. AXS further protects the integrity of its AXS Mobile ID tickets and AXS Mobile App through various security and access control measures, including user authentication and its proprietary code-rotation algorithm, which changes the ticket's QR code on a variable duration. *Id.* ¶ 17. AXS Mobile ID tickets are only delivered to a consumer's AXS Mobile App

account, to be displayed at the venue with their mobile phone, and never via a website link. *Id.* ¶ 18.

Users of the AXS Website and AXS Mobile App are bound by AXS's Terms of Use. Those terms prohibit, among other things, the commercial or unauthorized use of AXS's trademarks in connection with third-party products and services. *Id.* ¶¶ 26–30.

### B.     The AXS Marks

AXS has operated under the mark "AXS" since 2011, and is the owner of a family of AXS marks, including a valid, incontestable federal registration for the mark AXS (U.S. Reg. No. 4429044), registered in connection with "*promotion of sporting events, musical concerts and other entertainment events of others; [a]rranging for ticket reservations for sporting events, musical concerts and other entertainment events; ticket agency services for sporting events, musical concerts and other entertainment events, rendered online, through phone orders and through ticket outlets*" in Classes 35 and 41 (the "**AXS Registration**"). Dkt. No. 1 ¶ 19; *see also* Dkt. No. 1-3. AXS additionally holds common law trademark rights in the mark which is the subject of the AXS Registration, as well as other AXS and AXS-formative marks, including **aXS**, **aXs**, AXS ID, and AXS MOBILE ID (collectively with the AXS Registration, the "**AXS Marks**"). *Id.* ¶ 21. The AXS Marks are used in connection with the ticketing products and services associated with the AXS Registration, including electronic tickets; ticketing software; ticket agency and reservation services; promotion of sporting events, musical concerts and other entertainment events; and entertainment services and audio/video recordings featuring live musical performances. *Id.*

AXS Mobile ID tickets use a distinctive color scheme and layout which incorporates the AXS Marks including AXS, **aXS** and AXS MOBILE ID, as displayed below:

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC



Figure 1: Authentic AXS Mobile ID Ticket

Dkt. No. 1 ¶ 16.

Over the past 11 years, AXS has invested significant resources in the advertising and promotion of its products and services under the AXS Marks, which has resulted in prominent, national media coverage such as articles in The Hollywood Reporter, Billboard and Sports Business Journal. *Id.* ¶ 23; *see also* Dkt. No. 1-4. Most recently, AXS received industry-wide coverage of its new and renewed partnerships with independent live music venues, including articles featured in Billboard, TicketNews and Digital Music News. Dreibelbis Decl. ¶ 10.

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

3

As a result of the extensive sales, advertising, and promotional efforts AXS has undertaken in connection with the AXS Marks, AXS has developed an enduring reputation and legacy of goodwill in the AXS Marks, which the relevant consuming public has come to recognize and associate exclusively with the AXS Marks, AXS, and AXS's products and services. Dkt. No. 1 ¶ 22.

### C.    SMP's Counterfeiting Use of the AXS Marks

SMP operates a website platform that enables brokers to circumvent AXS's authentication and security measures, create counterfeit tickets bearing the AXS Marks, and sell them to unsuspecting consumers. *See* Dkt. No. 1 ¶¶ 31–32, 46; Dkt. No. 1-5. SMP circumvents AXS's established authentication measures by essentially spoofing the AXS Mobile ID ticket, including what appears to be a dynamic QR code, and thereby creating a counterfeit ticket (the "**Counterfeit Product**"), which can be scanned at venue entry. Dkt. No. 1 ¶ 32. SMP appears to create the Counterfeit Products by using a web browser add-on to access the AXS Website and the AXS Mobile ID tickets stored there and then generate wallet links for the Counterfeit Products. *Id.* ¶ 35.

As shown in Figure 2 below, the Counterfeit Product incorporates the AXS Marks —including the same grid background featuring the AXS logo mark; the prominent use of the AXS MOBILE ID mark near the QR code; and incorporation of the AXS logo mark into the QR code itself. *Id.* ¶ 34. The Counterfeit Product displays the SMP website (securemypass.com) at the top. *Id.*

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

4

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC



Figure 2: Comparison of an Authentic AXS Mobile ID Ticket to the SMP Counterfeit Product (Emphasis Added)

Dkt. No. 1 ¶ 33.

The Counterfeit Product lacks many benefits associated with an authentic product and may not even allow a purchaser to gain admission to the event identified on the Counterfeit Product. *Id.* ¶ 38. Specifically, because the Counterfeit Products are typically not linked to the purchaser's identity, a reseller or broker could send the same wallet link generated by SMP to multiple buyers, only one of which *may*

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

5

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

successfully scan into the venue gate. *Id.* ¶ 39. Similarly, Counterfeit Products which are not linked to a purchaser's identity often do not include any of the additional benefits, products and services that may have been sold in connection with the authentic ticket, such as access to VIP locations and services, exclusive merchandise, "meet-and-greet" opportunities and venue parking passes. *Id.* ¶ 42. Moreover, because the Counterfeit Products can list non-existent seats and sections, purchasers may be unable to gain admission to or watch the event or be removed from the venue even after entry. *Id.* ¶ 41; *see also id.* ¶ 48.

SMP's use of the AXS Marks has caused widespread harm to consumers who are the victims of SMP's fraudulent conduct, and to venues and other event organizers who shoulder the costs and burden associated with identifying and assisting those victims. *See id.* ¶¶ 46–55. Numerous consumers have purchased Counterfeit Products believing them to be the authentic AXS Mobile ID tickets. *Id.* And upon being turned away or otherwise not receiving the full benefits normally associated with AXS Mobile ID tickets, many customers have complained directly to AXS, believing AXS to be the source of, or otherwise affiliated with, the Counterfeit Products. *Id.* ¶¶ 52–55.

SMP's infringing activities have occurred in the State of California and in this judicial district, including the sale, distribution and display of Counterfeit Products to events occurring at the Crypto.com Arena and the Greek Theatre both located in Los Angeles, California. *Id.* ¶ 10.

### D.   *SMP's Post-Complaint Activities*

After AXS filed its Complaint, SMP issued a response on its website, emphasizing that it would continue its infringing business as usual: "Rest assured, we stand with the broker community and **SecureMyPass remains fully operational**." (emphasis in original). Dreibelbis Decl. ¶ 11. And it continues its infringing activities, with documented instances of counterfeit ticketing as recent as May 30, 2026. *See* Declaration of Greg Schmale in Support of AXS's Request for

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

6

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

Entry of Default Judgment ("**Schmale Decl.**") ¶¶ 3–5. For example, AXS's venue partner at Red Rocks Amphitheatre reported numerous customers experiencing issues with entry at the Alan Walker concert on May 30, 2026, all of whom had received Counterfeit Products purchased from third party ticket resellers. *Id.* ¶ 5. Similarly, on May 12, 2026, five customers were unable to enter the Red Rocks Amphitheatre for the Lewis Capaldi concert after their Counterfeit Products were rejected. *Id.* ¶ 4. And at the 2026 WM Phoenix Open, part of the PGA Tour, numerous customers were denied entry when attempting to enter with Counterfeit Products. *Id.* ¶ 3.

SMP has also added additional website features designed to facilitate mass spoofing of tickets. For example, its new Automations feature allows users to import ticketing accounts in bulk and either (1) "create a task" within the website platform, which crawls a specific event in the broker's account, and (2) "crawl full account," which scans the entire broker account for all events. Dreibelbis Decl. ¶ 12. The platform then populates all tickets from the broker account into a "Tasks" tab on SMP's website and provides the option for SMP's clients to generate wallet links to the Counterfeit Products in "just a few clicks." *Id.*

According to its own website, SMP charges brokers fees on a per-ticket basis or as part of a bulk discount package for services that facilitate the circumvention of AXS's and other ticketing providers' security measures. Dreibelbis Decl. ¶ 11. For each Counterfeit Product generated through its platform, SMP charges $10. *Id.* SMP's bulk discount packages are offered in three tiers, ranging from $2,500 to $10,000 per site. *Id.* SMP is reportedly "[o]ne of the most widely used tools" by ticket brokers; public website traffic data indicates SMP receives about 150,000 visits per month. See *id.* ¶¶ 12–13. SMP is also aware that venues have denied entry to purchasers of SMP's Counterfeit Products, as its "FAQ" page identifies some AXS venue partners known to reject such tickets, including the Crypto.com Arena. *Id.* ¶ 14. SMP nevertheless disclaims any responsibility for those denials and resulting

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

7

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

consumer harm, stating it "hold[s] no responsibility if you receive a denied entry claim[.]" *Id.*

### E.    SMP's Default

Even after being properly served, SMP never appeared in this case, despite being aware that its failure to respond could result in a default judgment. *Id.* ¶¶ 5, 9. Pursuant to the Court's April 9, 2026, Order, SMP was served by email at support@securemypass.com on April 13, 2026. Dkt. No. 29. SMP missed the May 4, 2026, deadline to respond to the Complaint. *Id.*; *see also* Dkt. No. 32. The Clerk entered Default against SMP on May 18, 2026. Dkt. No. 34.

## III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. By such a default, all of the plaintiff's well-pled allegations in the Complaint are accepted as true, except those pertaining to damages, and the defendant's liability is conclusively established. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). In determining damages, an evidentiary hearing is not required; instead, the Court may rely on the declarations submitted by the plaintiff. *See Philip Morris U.S.A. Inc. v. Castworld Prods. Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

The plaintiff must also comply with the procedural requirements set forth in Federal Rules 54(c) and 55, as well as those in Local Rule 55-1. Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

8
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1(a)-(e).

Once these procedural requirements are satisfied, a district court has discretion to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court's discretion is guided by weighing the following *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   ARGUMENT

### A.   *AXS Is Entitled to Default Judgment Against SMP*

Because this Court has jurisdiction over SMP, service was properly effected, AXS has complied with all procedural prerequisites, and the merits and equitable considerations support entry of default judgment, the Court should grant AXS's request for entry of default judgment against SMP. Further, AXS does not request any remedy different in kind than was prayed for in the Complaint. Fed. R. Civ. P. 54(c).

### 1.   The Court Has Jurisdiction Over SMP and Service Was Properly Effected

AXS has established that the Court has jurisdiction over both the subject matter and the parties in this case. Federal courts have subject-matter jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. Where such jurisdiction exists, courts may exercise supplemental jurisdiction over any state law claims that "derive from a common nucleus of operative fact." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 157 (1997) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). AXS has asserted claims for federal trademark counterfeiting and infringement and federal unfair competition, in addition to ancillary state law claims (common law trademark infringement and unfair competition under California law,

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

9

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*, and breach of contract under California law). The Court has subject matter jurisdiction under 15 U.S.C. §§ 1121, 1331 and 1338(a) for AXS's federal claims; the Court may exercise supplemental jurisdiction over AXS's state law claims under 28 U.S.C. §§ 1367(a) and 1338(b), because each state law claim arises from SMP's creation, sale, and distribution of Counterfeit Products bearing the AXS Marks. *See* Dkt. No. 1 ¶¶ 2–4, 7–8.

SMP's default establishes personal jurisdiction because any objection to personal jurisdiction is waived unless timely raised. Fed. R. Civ. P. 12(h)(1). Although a court may nevertheless dismiss an action *sua sponte* for lack of personal jurisdiction, there is no such concern here. *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974). Here, the Court has specific personal jurisdiction because SMP has conducted substantial business in this judicial district, including the sale, distribution and display of Counterfeit Products for events occurring at the Crypto.com Arena and the Greek Theatre in Los Angeles. Dkt. No. 1 ¶¶ 9–10; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (holding specific jurisdiction to be satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.") (citations omitted). Moreover, SMP consented to personal jurisdiction in this judicial district when it accessed the AXS Website and agreed to AXS's Terms of Use, which provide that "You agree that any action at law or in equity arising out of or relating to these Terms shall be filed only in the state or federal courts located in Los Angeles County, California, and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action." Dkt. No. 1 ¶ 11; *see Burger King*, 471 U.S. at 472 n.14 ("[B]ecause the personal jurisdiction is a waivable right, . . . a litigant may give 'express or implied consent to the personal jurisdiction of the court.").

Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

1400(b) because SMP conducts, transacts, and solicits business in this judicial district, the infringing activities that are the subject of this action occur in this district, and SMP is subject to AXS's Terms of Use which require such action to be brought in the state or federal courts in Los Angeles.

Lastly, on April 13, 2026, SMP was properly served via its email address support@securemypass.com pursuant to the Court's Order Granting Motion for Substitute Service. Dkt. No. 26. AXS subsequently filed its proof of service. Dkt. No. 29.

Accordingly, this Court has subject matter and personal jurisdiction over SMP, venue is proper in this district, and service of process was properly effected on SMP.

### 2. AXS Has Satisfied the Procedural Requirements

Pursuant to Local Rule 55-1, this Motion is accompanied by the Dreibelbis Declaration that declares SMP was served with the Complaint and Summons on April 13, 2026, and default was entered on May 18, 2026. Dreibelbis Decl. ¶¶ 3–4. SMP is a website and a corporate entity and is therefore neither an infant, an incompetent person, in the military service, or otherwise exempted under the Servicemember Civil Relief Act. *Id.* ¶¶ 6–7. Notice of this Motion is not required under Rule 55(b)(2), because SMP failed to appear in this action. Accordingly, AXS has satisfied all applicable procedural requirements.

### 3. The *Eitel* Factors Strongly Favor Default Judgment

The *Eitel* factors weighs in favor of granting default judgment against SMP.

#### a. AXS Will Be Prejudiced Without the Default Judgment Remedy

AXS would suffer prejudice without the default judgment because it "would be without other recourse for recovery." *Castworld Prods., Inc.*, 219 F.R.D. at 499. Without entry of permanent injunction and monetary damages against SMP, AXS would be unable to prevent SMP from continuing to sell, distribute and display its Counterfeit Products. For this reason, the first *Eitel* factor favors entry of default

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

judgment.

b.    AXS Has Demonstrated the Substantive Merits of Its Claims and Sufficiency of Its Complaint

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) (internal citations omitted). Taking all well-pleaded facts as true, the Complaint states the following claims: (1) trademark counterfeiting in violation of 15 U.S.C. § 1114; (2) trademark infringement in violation of 15 U.S.C. § 1114 and common law; (3) false designation of origin and unfair competition under 15 U.S.C. § 1125 and common law; (4) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (5) breach of contract under California law. Dkt. No. 1 ¶¶ 59–108. AXS has sufficiently stated each of these claims in its Complaint.

i.    *AXS's Trademark Counterfeiting, Infringement and Unfair Competition Claims*

Counts I–VI of the Complaint assert trademark counterfeiting, trademark infringement and unfair competition claims under federal, state and common law. *Id.* ¶¶ 59–102. "The Ninth Circuit has acknowledged that claims for trademark infringement, unfair competition under federal law, and unfair competition under California law are all 'subject to the same legal standards.'" *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2022 WL 3908831, at *3 (C.D. Cal. Aug. 30, 2022) (internal citation omitted). "Further, for the purpose of this analysis, the elements of trademark infringement and trademark counterfeiting are the same: '[w]hen an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached.'" *Id*. (citation omitted). "This framework requires Plaintiff to show: (1) it has valid, protectable trademarks; (2) [Defendant] used the marks; and (3) [Defendant's] use of the marks is likely to cause consumer confusion." *GS Holistic, LLC v. Heaven N Sky, Inc*, No. 2:24-CV-07775-SPG-MAR, 2025 WL

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

12

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

3190639, at *6 (C.D. Cal. Apr. 10, 2025) (J. Garnett).

The Complaint adequately alleges each element. First, it details AXS's ownership of the federally registered mark AXS (U.S. Reg. No. 4429044) ("**AXS Registration**"), as well as its broader portfolio of AXS Marks including **axs** and AXS MOBILE ID. Second, AXS alleges that SMP uses the AXS Registration and AXS Marks without authorization on its Counterfeit Products. Dkt. No. 1 ¶¶ 19–20, 32–34. SMP spoofs AXS's authentic AXS Mobile ID ticket, including its dynamic QR code, to create a counterfeit ticket which can be scanned at venue entry, while lacking many of the security features and benefits associated with an authentic AXS Mobile ID ticket. *Id.* ¶¶ 32, 38. The Counterfeit Product closely mimics an AXS Mobile ID ticket, including use of the AXS Marks prominently throughout the ticket layout, as shown in Figure 2 above. *Id.* ¶¶ 33–34. Third, "[c]onsumer confusion is presumed when a counterfeit mark is used." *GS Holistic,* 2025 WL 3190639, at *6. In any event, SMP's Counterfeit Products are designed to appear indistinguishable from authentic AXS Mobile ID tickets, and AXS has received numerous reports of actual consumer confusion, including consumers who mistakenly believed AXS was the source of, or affiliated with, the Counterfeit Products. *Id.* ¶¶ 46–56.

For these reasons, AXS has sufficiently alleged its trademark counterfeiting, infringement, and unfair competition claims.

### ii.    *AXS's Breach of Contract Claim*

A claim for breach of contract requires (1) the existence of a contract; (2) AXS's performance or excuse for nonperformance; (3) SMP's breach; and (4) damages to AXS as a result of the breach. *Pro Water Sol., Inc. v. Angie's List, Inc.*, 457 F.Supp.3d 845, 850–51 (C.D. Cal. 2020). AXS has sufficiently alleged each of these elements. The Complaint alleges that SMP agreed to the AXS Terms of Use by accessing the AXS website or using the AXS Mobile App, thereby forming a valid and enforceable contract. Dkt. No. 1 ¶ 104. AXS performed under that agreement by providing access to its products and services. SMP breached AXS's Terms of Use by

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

13

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

using the AXS Marks in connection with the sale and distribution of the Counterfeit Products without AXS's authorization or consent, because the Terms of Use prohibit use of AXS's trademarks in connection with any product or service that is not offered by AXS, or in such a manner "that could reasonably mislead consumers into believing they are dealing with AXS or an AXS-authorized source." *Id.* ¶ 105. As alleged, SMP's conduct has caused AXS substantial irreparable harm, including reputational injury. *Id.* ¶ 108.

AXS has therefore sufficiently established its contract claim. *See AXS Grp. LLC v. Internet Referral Servs., LLC*, No. 2:24-377-SPG-EX, 2024 WL 4875389, at *4 n.3 (C.D. Cal. Jan. 24, 2024) (J. Garnett) (finding similar allegations concerning unauthorized use of AXS's trademarks sufficient to state a contract claim). Together with AXS's trademark infringement, counterfeiting, and unfair competition claims, the second and third *Eitel* factors favor entry of default judgment.

c.    The Sum of Money at Stake Is Proportional to the Seriousness of SMP's Conduct

In connection with the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F.Supp.2d at 1176; *see also Eitel*, 782 F.2d at 1471–72. "[W]here the amount sought is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Patagonia, Inc. v. McHugh*, No. LA CV19-07666 JAK (AFMx), 2020 WL 4258818, at *5 (C.D. Cal. Apr. 21, 2020).

AXS seeks to recover statutory damages under 15 U.S.C. § 1117(c). "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Motium, Inc. v. Leung*, No. CV 20-00869-CJC (ASx), 2020 U.S. Dist. LEXIS 182467, at *18 (C.D. Cal. Oct. 1, 2020) (citation omitted). Where, as here, the infringement or counterfeit is willful, the Lanham Act authorizes statutory damages up to "$2,000,000 per counterfeit mark per type of goods or services sold,

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

14
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

offered for sale, or distributed." 15 U.S.C. § 1117(c)(2). AXS has alleged—and SMP's default establishes—that SMP willfully and maliciously infringed the AXS Registration in connection with its Counterfeit Products, making the maximum statutory award available.

Here, the maximum amount is warranted. SMP's default has deprived AXS and the Court of any meaningful information regarding the scope of SMP's counterfeiting operation, including the volume of Counterfeit Products sold, SMP's revenues and profits, and the full extent of the harm caused by its repeated, widespread infringement. Nevertheless, public information demonstrates that SMP operates a substantial commercial enterprise built around circumventing AXS's and other ticketing platforms' security measures. SMP charges brokers fees on a per-ticket basis ($10 per Counterfeit Product), or the option to purchase bulk discount packages, ranging from $2,500 to $10,000 per site, for its services. Dreibelbis Decl. ¶ 11. Even a modest number of subscribers and counterfeit-ticket transactions would generate substantial revenues over time, particularly given that SMP has operated for years and is widely known among brokers as a primary tool for bypassing ticketing providers' security measures. *Id.* ¶ 12. Public website traffic data indicates that SMP has such a substantial user base, suggesting that SMP's website receives approximately 150,000 visits per month. *Id.* ¶ 13. Although the precise scope of its operation remains known only to SMP due to its evasive tactics, the very purpose of statutory damages is to address this evidentiary gap and prevent infringers from benefitting from their failure to participate in litigation.

The record also demonstrates substantial harm. SMP has continued its infringing activities despite notice of AXS's rights, and its conduct has threatened consumer trust, damaged AXS's goodwill and reputation, and interfered with AXS's relationships with event organizers, venues, and ticket purchasers. SMP continues to market and sell tickets for venues that it expressly acknowledges reject SMP's Counterfeit Products, including the Crypto.com Arena, demonstrating a conscious

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

15
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

disregard for those affected by its conduct. Dreibelbis Decl. ¶ 14. SMP's conduct has further imposed significant operational burdens on AXS and its clients, requiring the expenditure of substantial resources to investigate fraudulent transactions, respond to customer complaints, resolve disputes at event entry points, train personnel to identify counterfeit tickets and assist affected consumers, implement enhanced fraud-prevention measures, and mitigate reputation damages caused by denied entry and dissatisfied consumers. Schmale Decl. ¶ 6; *see also* Dkt. No. 1 ¶¶ 46, 48, 52, 56. These costs are difficult to quantify with precision, but they are substantial and ongoing.

Given the willful nature of SMP's infringement, the commercial scale of its counterfeiting operation, the significant reputational and operational harms inflicted on AXS, and SMP's refusal to participate in this litigation, a statutory damages award of $2,000,000 is reasonable, proportionate, and necessary to compensate AXS, deprive SMP of the benefits of its unlawful conduct, and deter similar misconduct. Indeed, numerous courts have awarded the maximum statutory damages in default judgment involving willful trademark infringement and counterfeiting. *See e.g.*, *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL (FFMx), 2014 WL 4679001, at *12 (C.D. Cal. Sept. 18, 2014) (awarding $2 million in statutory damages in context of default judgment because "[s]uch wrongful conduct by Defendants, combined with Defendants' failure to dispute Plaintiff's requested damages amount, persuades the Court that a high damage award within statutory bounds is reasonable and just"); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1124 (C.D. Cal. 2007) (awarding maximum statutory damages for willful counterfeiting based on need to deter defendant and other counterfeiters from violating plaintiff's valid trademarks, to compensate plaintiff and to punish defendant for its willful actions)[1]; *LG Corp. v. Huang*, No. 16-CV-1162 JLS (NLS), 2017 WL

---

[1] This case was decided prior to the 2008 amendment to the Lanham Act increasing the statutory damages cap from $1 million to $2 million per mark, per type of goods

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

476539, at *9–*10 (S.D. Cal. Feb. 6, 2017) (awarding maximum statutory damages amount due to defendants' willful actions and strength and recognition of plaintiff's brand).

AXS also seeks to recover $289,687.05 in attorneys' fees and $3,989.27 in costs. Dreibelbis Decl. ¶¶ 25–26. As discussed below, these fees and costs are reasonable. *See infra* at Section IV.B.3. The requested amounts are calculated based on actual attorneys' fees and litigation expenses incurred in this action to date and reflect rates consistent with those prevailing in the Los Angeles legal marketplace. Declaration of Michael L. Turrill in Support of AXS's Request for Entry of Default Judgment Against SMP and Permanent Injunction ("**Turrill Decl.**") ¶ 4.

Finally, AXS seeks an injunction to prevent further infringements by SMP. The requested injunction, statutory damages award, and attorneys' fees and costs are proportional to the seriousness of SMP's conduct. Accordingly, the fourth *Eitel* factor favors entry of default judgment.

### d. No Possibility of Dispute Concerning Material Facts

Upon entry of default, all facts are accepted as true, except those pertaining to damages, and the defendant's liability is conclusively established. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (citing *Geddes*, 559 F.2d at 560). SMP could have disputed the allegations in the Complaint, but chose not to respond, despite having actual knowledge of the Complaint since January 2026. Dreibelbis Decl. ¶ 11. SMP's failure to respond supports a finding that there is no dispute as to the material facts alleged, and therefore the fifth *Eitel* factor also weighs in favor of granting the Motion.

### e. SMP's Default Was Inexcusable

No evidence of excusable neglect on SMP's part has been presented. To the contrary, SMP acknowledged service and understood that its failure to respond could lead to a default judgment. Dreibelbis Decl. ¶ 9. SMP publicly declared it would

or services, if such use was willful. 15 U.S.C. § 1117(c)(2).

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

continue its infringing activities with impunity notwithstanding this litigation. *See id.* ¶ 15. Under these circumstances, SMP's failure to appear was deliberate, and this factor weighs strongly in favor of default judgment.

### f.    Default Judgment Is Appropriate and Not Contrary to Policy

"When a defendant fails to answer a plaintiff's complaint, a decision on the merits 'is impractical, if not impossible.' Therefore, 'the [courts'] preference to decide cases on the merits does not preclude a court from granting default judgment.'" *Patagonia*, 2020 WL 4258818, at *6 (citation omitted).

In sum, this final *Eitel* factor is outweighed by the other six factors that support entry of default judgment against SMP.

### B.    AXS Is Entitled to Its Requested Remedies

AXS's Complaint prays for relief in the form of, *inter alia*, a permanent injunction, statutory damages under the Lanham Act and of attorneys' fees and costs in this action. Dkt. No. 1, at 26–28.

### 1.    AXS Is Entitled to a Permanent Injunction

The Lanham Act gives the court the "power to grant injunctions, according to the [rules] of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). Separately, California's Unfair Competition Law gives the court power to grant injunctive relief for AXS's state law claim for unfair competition. Cal. Bus. & Prof. Code § 17203. To obtain a permanent injunction, AXS must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

First, under the Lanham Act, a plaintiff is "entitled to a rebuttable presumption

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

18

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

of irreparable harm" upon a finding of infringement. 15 U.S.C. § 1116(a); *see also Tempur Sealy Int'l, Inc. v. Seltyk Mattress, Inc.*, No. 2:22-cv-06194-ODW (PVCx), 2023 WL 3075881, at *5 (C.D. Cal. Apr. 25, 2023) (applying this presumption in the context of a default judgment). "Upon default, the presumption is conclusive." *Simple Design Ltd. v. Enerjoy Ltd.*, 710 F.Supp.3d 817, 827 (C.D. Cal. Jan. 5, 2024) (citing *Tempur Sealy*, 2023 WL 3075881, at *5). Thus, AXS has established SMP's infringement and resulting harm to goodwill associated with AXS Marks.

Second, the Ninth Circuit has held that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Id.* (citing *Century Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Because SMP continues its infringing activities, *see supra* Section II.D, it has adequately demonstrated that a remedy at law would be inadequate.

The balance of hardships also favors an injunction. As discussed above, AXS will be irreparably harmed by SMP's continued infringement. By contrast, "an infringing defendant faces no hardship from being enjoined from violating the law." *Simple Design*, 710 F.Supp.3d at 827.

Finally, the public interest favors an injunction. The public "has a strong interest in 'avoiding confusion between two companies' products.'" *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1084 (C.D. Cal. 2012) (citation omitted). SMP's use of the AXS Marks is not only designed to cause consumer confusion, but is causing actual confusion in the marketplace. Therefore, the public "interest in being free from deception" favors entry of an injunction. *See Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV 13-05167 BRO (MANx), 2015 WL 4517846, at *24 (C.D. Cal. July 24, 2015).

AXS is therefore entitled to permanent injunctive relief enjoining SMP from using the AXS Marks, whether in connection with SMP's current website www.securemypass.com, or in connection with any future company or website

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

19

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

platform which is owned, controlled or managed by the individuals who comprise or control SMP.

### 2. AXS Is Entitled to Statutory Damages

AXS's Complaint also requested statutory damages under 15 U.S.C. § 1117. As discussed above, $2,000,000 in statutory damages is warranted and reasonable considering SMP's willful and widespread misconduct. *See supra* at Section IV.A.3.c. This amount would sufficiently compensate AXS for the extensive infringement of the AXS Registration alleged in the Complaint, while also serving to deter SMP from committing future wrongful conduct.

### 3. AXS Is Entitled to Its Reasonable Attorneys' Fees and Costs

#### a. AXS's Entitlement to Attorneys' Fees

In exceptional cases, the Court may award reasonable attorneys' fees to the prevailing party. 15 U.S.C. § 1117(a). In the Ninth Circuit, whether a case is "exceptional" is determined by examining the "totality of the circumstances," including nonexclusive factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (citations omitted). Ultimately, an exceptional case is "one that stands out from the others with respect to the substantive strength of the party's litigating position . . . or the unreasonable manner in which the case was litigated" based on a preponderance of the evidence. *Id.* at 1180. Although Local Rule 55-3 provides a schedule of attorneys' fees for default judgment, an attorney may claim fees in excess of this schedule by requesting the Court to determine a reasonable fee award. C.D. Cal. L.R. 55-3. In doing so, courts apply the lodestar method: "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate[,]" and may adjust the resulting figure based on additional considerations, including the results obtained. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir.

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

20

MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

2018).

AXS requests attorneys' fees of $289,687.05 based on the actual fees incurred in litigating this lawsuit. This case is "exceptional"; courts routinely find trademark infringement actions resulting in default judgment to warrant fee awards, particularly where the infringement is willful and the defendant has deliberately disregarded the judicial process. *See e.g.*, *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F.Supp.3d 1117, 1133 (C.D. Cal. 2023) (awarding attorneys' fees in entry of a default judgment in a trademark infringement case); *Animaccord Ltd. v. Tran*, No. 23-00173 LEK-WRP, 2024 WL 1976031, at *3 (D. Haw. Mar. 28, 2024) ("Courts award attorneys' fees under the Lanham Act where default judgment has been entered against a defendant for intentional or willful trademark infringement."); *see also Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023) (awarding attorneys' fees in trademark infringement action where the defendant "intentionally and precisely copied [plaintiff's] designs" and "ignored [plaintiff's] cease and desist letters").

The rates charged by AXS's counsel are reasonable in light of their considerable intellectual property experience and comparable market rates. *See* Turrill Decl. ¶¶ 3–4; *see also Ingram v. Oroudijan*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (internal citation omitted)). Likewise, the hours expended were reasonable, especially "where counsel's hours were made necessary by [SMP's] efforts to avoid judgment and continue infringing." *Russell v. Invech Inc.*, No. 5:19-cv-01074-FMO-SHK, 2020 WL 6820805, at *9 (C.D. Cal. Oct. 26, 2020). Here, SMP ignored AXS's pre-suit demand letter. *See* Dkt. No. 1 ¶ 57. It obtained actual knowledge of the Complaint no later than two days after its filing, *see* Dreibelbis Decl. ¶ 15, yet continued its infringing activities with impunity, stating its unwavering intention to do so in the

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

21
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

media and on its website. Dreibelbis Decl. ¶ 15. SMP then employed evasive tactics designed to frustrate service, refusing to accept service via email and failing to provide a physical address, thereby requiring AXS to expend time and resources to effect alternative service. *See* Dkt. No. 19. Finally, AXS's voluntary billing reductions further support the reasonableness of the requested fee award. Dreibelbis Decl. ¶¶ 19–20 (requesting only the fees billed by three attorneys, although eight attorneys and two support staff members worked on this matter).

An award of attorneys' fees is also necessary to advance the Lanham Act's compensatory and deterrent purposes. Despite receiving notice of this lawsuit, SMP continues to market, sell, and distribute counterfeit AXS tickets. *See* Schmale Decl. ¶¶ 3–5. AXS therefore seeks an award of attorneys' fees in the amount of $289,687.05, which is calculated by multiplying the number of hours AXS's primary attorneys reasonably expended on this litigation by a reasonable hourly rate. Dreibelbis Decl. ¶¶ 21–22, 25; *see also* Turrill Decl. ¶ 4.

#### b.    AXS's Entitlement to Costs

Under the Lanham Act, AXS, as a prevailing party plaintiff, is entitled to recovery of costs. 15 U.S.C. § 1117(a). AXS requests $3,989.27 in costs, which include filing fees, process server fees, research and investigation vendor fees and delivery costs associated with Chambers copies of the initial case documents. Dreibelbis Decl. ¶ 26.

## V.    **CONCLUSION**

For the foregoing reasons, AXS's motion for entry of default judgment against SMP should be granted.

Respectfully submitted this 2nd day of July, 2026.

**HOGAN LOVELLS CADWALADER US LLP**

*/s/ Michael L. Turrill*

Michael L. Turrill
Sun Y. Moon
Anna Kurian Shaw *(Pro Hac Vice)*
Brendan C. Quinn *(Pro Hac Vice)*
Hadley Dreibelbis *(Pro Hac Vice)*

*Attorneys for Plaintiff AXS Group LLC*

HOGAN LOVELLS
CADWALADER
US LLP
ATTORNEYS AT LAW
LOS ANGELES

23
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC

## <u>Certificate of Compliance</u>

The undersigned, counsel of record for Plaintiff AXS Group LLC certifies that this brief contains 6,556 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 2, 2026                    **HOGAN LOVELLS CADWALADER US LLP**


                                       */s/ Michael L. Turrill*
                                       Michael L. Turrill

Hogan Lovells
Cadwalader
US LLP
Attorneys At Law
Los Angeles

24
MOTION FOR ENTRY OF DEFAULT JUDGMENT – CASE NO. 2:26-cv-00361-SPG-PVC